Filed 8/31/15  P. v. Rude CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067437 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. RIF1206689) |
| RYAN EDWARD RUDE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Riverside County, Thomas E. Kelly, Judge.  Affirmed and remanded with directions.

Richard de la Sota, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler and Julie L. Garland, Assistant Attorneys General, William M. Wood and Heather F. Crawford, Deputy Attorneys General, for the Plaintiff and Respondent.

A jury convicted Rude of first degree residential burglary (Pen. Code[1], § 459; counts 1, 28, 34); securities fraud (Corp. Code, § 25401; counts 3, 5, 7, 11, 13, 18, 21, 24, 30, 32, 35, 37, 41, 44, 47, 50, 53); offering and selling unqualified securities (Corp. Code, § 25110; counts 4, 6, 8, 12, 14, 19, 22, 25, 31, 33, 36, 38, 42, 45, 48, 51, 54); and grand theft (§ 487, subd. (a); counts 17, 39, 46, 52). As to count 28, the jury found true that a person other than an accomplice was present in the residence. (§ 667.5, subd. (c)(21).) It also found true that Rude took property worth more than $65,000 (§ 12022.6, subd. (a)(1); counts 1, 3, 4, 5, 6, 7, 8, 34, 35, 36, 44, 45); he took property worth more than $200,000 (§ 12022.6, subd. (a)(2); counts 13, 14, 24, 25, 28, 30, 31, 37, 38, 50, 51); and he had committed two or more felonies involving the taking of more than $500,000 (§ 186.11, subd. (a)(2)). The jury acquitted him of some grand theft charges (§ 487, subd. (a); counts 2, 9, 20, 23, 29, 40, 43, 49); unauthorized use of personal information (§ 530.5; count 10); and unlawfully employing a scheme to defraud in connection with the sale of a security (Corp. Code, § 25541, subd. (a); count 55).

The court sentenced Rude to 26 years four months in state prison.

Rude challenges his sentence based on the jury's true finding on the count 28 enhancement that he committed first degree burglary, a violent felony within the meaning of section 667.5, subdivision (c)(21). He contends the purpose of that statute is "to limit conduct credits in cases in which an intruder creates a risk of bodily harm or death greater than that present in other residential burglaries by breaking into a home in which a

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

resident or other person not involved in committing the burglary is present" but "[n]o such danger was presented by this case. While [his] conviction for burglary may have been supported by substantial evidence, his conduct did not involve any risk whatever to any other person." Based on the plain language of section 667.5, subdivision (c)(21), we reject Rude's contention and affirm the judgment. We remand for the trial court to amend the abstract of judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Rude does not advance a sufficiency of the evidence challenge to his convictions other than on count 28; therefore, we need not set forth the details of his numerous convictions.[2]

## DISCUSSION

### I.

Although Rude challenges the court's use of the true finding of the violent felony enhancement attached to the count 28 burglary conviction, he concedes sufficient evidence supported the facts underlying that true finding. In October 2007, Rude entered the home of Guillermo Martin in Hesperia, California. Another person other than an accomplice was present in the residence. In the commission of the offense, Martin gave Rude a check for $292,461 in return for what Rude claimed was a secured promissory note.

---

[2] The victims in this case are Carlos Echeveste, Claire Tolentino, Mark Singer, Rosario Navarro, Ronald Kurylowicz, Guillermo Martin, Juan Perez, Patricia "Ellen" Kirwan, Ronald Smaron, Richard Davenport, Brian Schrieber, and Steven Zorn.

3

Rude frames his contention as a question of law: "Preliminarily, there is no dispute that another person was present when [he] entered the homes in question . . . . That undisputed evidence is insufficient as a matter of law, however, to support the true finding as to that one count (count 28)." Rude reasons: "No threat of violence was ever present, and it is absurd to call what [he] did an 'extraordinary crime of violence against the person.' It is impossible to imagine that the drafters of Proposition 21 would have, or even could have, anticipated or intended that [section 667.5,] subdivision (c)(21) would have applied to the facts of this case. Charging the [section 667.5,] subdivision (c)(21) in this case was a misuse of the allegation, and resulted in 'injustice, oppression and an absurd consequence.' This court should, as a result, vacate the jury's finding pursuant to that section as it pertained to [c]ount 28, and remand the case for resentencing."

Section 667.5, subdivision (c), sets forth a list of offenses that are "violent" felonies for the purpose of sentence enhancement, including: "(21) Any burglary of the first degree . . . wherein it is charged and proved that another person, other than an accomplice, was present in the residence during the commission of the burglary." Subdivision (c)(21) was added to section 667.5 in 2000 as part of Proposition 21 (the Gang Violence and Juvenile Crime Prevention Initiative, effective March 8, 2000). (See Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 667.5, p. 328; *John L. v. Superior Court* (2004) 33 Cal.4th 158, 165.) Section 667.5, subdivision (c)(21), "elevates a first degree burglary (§ 460) to the status of a violent felony if a person other than an accomplice is 'present in the residence' during the [commission of the] burglary. [Citation.] A defendant convicted of a violent felony is limited [with

4

regard] to the amount of presentence and postsentence custody credits that can be earned. [Citation.] Thus, a defendant convicted of a serious felony, such as first degree burglary of an inhabited dwelling house, can earn good time/work time credits to reduce his or her sentence up to 50 percent [citations], but a defendant convicted of a violent felony can earn a maximum of 15 percent in custody credits, thereby ensuring that he or she serves at least 85 percent of the sentence imposed." (*People v. Singleton* (2007) 155 Cal.App.4th 1332, 1336-1337.)

Rude contends the violent felony burglary designation in section 667.5, subdivision (c)(21), was never intended to apply to the type of burglaries that occurred in this case, where he went into Martin's home to pick up a check from the homeowner and give him or her a promissory note for that check, and the presence of Martin, the victim, was required to complete the transaction. He also explains Martin had invited him to his home. This contention requires us to interpret section 667.5. In doing so, we review the rules of statutory construction and case law regarding burglary.

A. *Rules of Statutory Construction*

"In interpreting a voter initiative such as Proposition [21], we apply the same principles that govern the construction of a statute. [Citations.] ' "Our role in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law. [Citation.]" ' [Citations.] [¶] Our first task is to examine the language of the statute enacted as an initiative, giving the words their usual, ordinary meaning. [Citations.] If the language is clear and unambiguous, we follow the plain meaning of the measure. [Citations.] '[T]he "plain meaning" rule does not prohibit a court from determining

5

whether the literal meaning of a measure comports with its purpose or whether such a construction of one provision is consistent with other provisions of the statute.' [Citation.] [¶] The language is construed in the context of the statute as a whole and the overall statutory scheme, and we give 'significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose. [Citation.]' [Citations.] The intent of the law prevails over the letter of the law, and ' "the letter will, if possible, be so read as to conform to the spirit of the act." ' " (*People v. Canty* (2004) 32 Cal.4th 1266, 1276-1277 (*Canty*).) " 'If the Legislature has provided an express definition of a term, that definition ordinarily is binding on the courts.' " (*Id.* at p. 1277.)

When a statute is capable of more than one construction, " ' "[w]e must . . . give the provision a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the lawmakers, practical rather than technical in nature, which upon application will result in wise policy rather than mischief or absurdity." ' " (*In re Reeves* (2005) 35 Cal.4th 765, 771, fn. 9 (*Reeves*).) Where the language of the statute permits more than one reasonable interpretation, we "apply the principles that pertain where statutory ambiguity exists, adopting the interpretation that leads to a more reasonable result. [Citation.] It is appropriate to consider evidence of the intent of the enacting body in addition to the words of the measure, and to examine the history and background of the provision, in an attempt to ascertain the most reasonable interpretation." (*Canty, supra,* 32 Cal.4th at p. 1277.)

"We also consider that, under the traditional 'rule of lenity,' language in a penal statute that truly is susceptible of more than one reasonable construction in meaning or

6

application ordinarily is construed in the manner that is more favorable to the defendant. [Citation.] Nonetheless, ' "the rule of lenity applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule." ' " (*Canty, supra,* 32 Cal.4th at p. 1277.)

B. *Analysis*

We begin by examining the language of section 667.5, subdivision (c)(21) and note that when adding burglary to the list of violent felonies in section 667.5, the voters did not include every degree and type of burglary. Instead, they limited the violent felony designation to burglaries "of the first degree" in which "another person, other than an accomplice, was present in the residence during the commission of the burglary." (§ 667.5, subd. (c)(21).) Thus, for example, a first degree burglary of a residence is not a "violent felony" if the occupant is not present during the commission of the burglary. In addition, a second degree burglary of a store is not a violent felony, even if someone other than the perpetrator or an accomplice is present. In count 28, Rude entered the victim's home, while the victim was present, to commit various forms of theft. Thus, under the plain language of the statute, that burglary was a violent felony.

Rude contends that although the count 28 burglary falls within the literal language of the statute, in enacting Proposition 21, the voters did not intend for the violent felony designation to apply to this burglary, arguing section 667.5 was intended to address " 'extraordinary crimes of violence against the person' " and this burglary was not violent.

Rude's reference to "extraordinary crimes of violence" comes directly from section 667.5, which was enacted in 1976, and whose subdivision (c) contained a list of eight

violent felonies; it ended with the following language: "The Legislature finds and declares that those specified crimes merit special consideration when imposing a sentence to display society's condemnation for such extraordinary crimes of violence against the person." (Stats. 1976, ch. 1139, § 268, p. 5138.) Section 667.5, subdivision (c) has been amended numerous times since 1976; many of the amendments added offenses to the list of violent felonies. (See Historical and Statutory Notes, 49 West's Ann. Pen. Code (2010 ed.) foll. § 667.5, pp. 326-329 (hereafter Statutory Notes).) Currently, the statute lists 23 violent felonies that are subject to special consideration in the sentencing process. (§ 667.5, subd. (c).) Each time the statue was amended, it retained the substantive language at the end of subdivision (c). (Statutory Notes.) Since 1993, the last paragraph of section 667.5, subdivision (c) has provided: "The Legislature finds and declares that these specified crimes merit special consideration when imposing a sentence to display society's condemnation for these extraordinary crimes of violence against the person." Based on this history, we conclude that when the voters added subdivision (c)(21) to section 667.5, they knew that they were adding first degree burglaries in the presence of someone other than an accomplice to the list of "extraordinary crimes of violence against the person."

Rude contends his conduct in this case "did not involve any risk whatever to any other person." In addressing this contention, we examine the status of the law of burglary when the voters added subdivision (c)(21) to section 667.5.

Burglary involves the act of unlawful entry accompanied by the specific intent to commit grand or petit larceny or any felony. (§ 459; *People v. Montoya* (1994) 7 Cal.4th

8

1027, 1041 (*Montoya*).) A person may be liable for burglary upon entry with the requisite intent, regardless of whether the theft or felony actually committed is different from that originally contemplated, or whether any theft or felony is actually committed. (*Montoya,* at pp. 1041-1042.)

Over a century ago, the California Supreme Court concluded that "the language [of section 459] is so plain and simple that rules of statutory construction are not required to be consulted . . . . No words are found in the statute qualifying the character, kind, time, or manner of the entry, save that such entry must be accompanied with a certain intent; and it would be judicial legislation for this court to interpolate other conditions into the section of the code." (*People v. Barry* (1892) 94 Cal. 481, 482-483 (*Barry*).)

In *People v. Gauze* (1975) 15 Cal.3d 709, the California Supreme Court stated that in enacting section 459, "the Legislature has preserved the concept that burglary law is designed to protect a possessory right in property, rather than broadly to preserve any place from all crime" and held that a "burglary remains an entry which invades a possessory right in a building." (*Gauze,* at pp. 713, 714.) " 'Burglary laws are based primarily upon a recognition of the dangers to personal safety created by the usual burglary situation-the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence. The laws are primarily designed, then, not to deter the trespass and the intended crime, which are prohibited by other laws, so much as to forestall the germination of a situation dangerous

9

to personal safety.'  Section 459, in short, is aimed at the danger caused by the unauthorized entry itself." (*Gauze,* at p. 715.)

In *People v. Salemme* (1992) 2 Cal.App.4th 775 (*Salemme*), the defendant entered the victim's home with the intent of selling the victim fraudulent securities and twice succeeded in convincing the victim to buy the securities. (*Id.* at p. 778.) The court held that a burglary conviction is proper in the unusual situation where the victim opens the door and invites a defendant who intends to commit theft by false pretenses into his or her home. "[S]ince burglary is a breach of the occupant's possessory rights, a person who enters a structure enumerated in section 459 with the intent to commit a felony is guilty of burglary *except* when he or she (1) has an unconditional possessory right to enter as the occupant of that structure or (2) is invited in by the occupant who knows of and endorses the felonious intent." (*Id.* at p. 781.)

The issue in *People v. Nguyen* (1995) 40 Cal.App.4th 28 (*Nguyen*) was whether the defendant "committed burglary when he entered a house with the intent to steal property by giving the victim a worthless check in exchange for various items." (*Id.* at p. 30.) The defendant argued that his conduct did not constitute burglary "because the burglary laws are intended to protect against the 'security of habitation or occupancy, rather than an offense against ownership or property' and [in that case] '[t]here was no home invasion or intrusion of the type sought to be prevented under the burglary laws.' " (*Id.* at p. 31.) The defendant urged the court to reject a plain language interpretation of the burglary statute and apply a policy approach instead. The court rejected that argument, relied on *Salemme's* plain language approach, and held that the defendant was

10

properly convicted of burglary "in the unusual situation where the victim opens the door to a defendant intending to commit theft by false pretenses." (*Id.* at pp. 33-34.)

"Although the decisions generally have emphasized [the] aspect of the danger to personal safety created by the offense of burglary, other authority, involving factual circumstances in which actual danger appears not to exist or is relatively minor, and relying upon the purpose of the statute to protect against an invasion of a possessory right, has concluded that the threat to property interests alone, created by the burglar's entry and continued presence inside the structure, supports a finding of burglary." (*Montoya, supra,* 7 Cal.4th at p. 1043, citing *Salemme, supra,* 2 Cal.App.4th at pp. 781-782.)

When section 667.5, subdivision (c)(21) was enacted, existing case law (1) applied the burglary statutes to unlawful entries with the intent to commit theft by false pretenses by selling fraudulent securities (*Salemme, supra,* 2 Cal.App.4th 775) or passing bad checks (*Nguyen, supra,* 40 Cal.App.4th 28) and (2) observed that some burglaries threaten the personal safety of the occupants, while others threaten only the occupants' property interest (*Montoya, supra,* 7 Cal.4th 1027). However, the drafters of section 667.5, subdivision (c)(21) did not rely on any of these distinctions when defining which types of burglaries should be deemed violent felonies. Instead, they determined that the violent felony designation should apply to first degree burglaries where a person other than an accomplice is present during the commission of the burglary without consideration of the nature of the perpetrator's intended theft or felony. Borrowing the language the California Supreme Court used in *Barry*, "it would be judicial legislation for

11

this court to interpolate other conditions into" section 667.5, subdivision (c)(21). (*Barry, supra,* 94 Cal.4th at pp. 482-483.)

To the extent the electorate gave the matter any consideration, one can reasonably doubt whether it intended to include a white collar crime of the sort committed here within the definition of an "extremely violent crime" for the purpose of calculating presentence and postsentence custody credits under section 667.5. We point out that other crimes included in the statute's definition of "violent felonies" include those usually involving the use of force or fear: murder or voluntary manslaughter; mayhem; rape; sodomy as defined in section 286; any robbery, arson, carjacking, and extortion. Further, the Legislature has subsequently enacted legislation excluding certain burglaries from the definition of violent crime (see § 3417, subd. (b)(1)(C) [permitting the Department of Corrections and Rehabilitation to deny placement in community treatment programs to inmates, except that if the inmate has committed a violent offense listed in section 667.5, subdivision (c), the Department may consider an inmate for placement in the program on a case-by-case basis].)

Nevertheless, the Legislature has not modified section 667.5, and we therefore must interpret it as written using the canons of construction set forth above. The statutory language is "clear and unambiguous" (*People v. Canty, supra,* at p. 1276) and we thus have no cause to "attempt to ascertain the most reasonable interpretation" of it. (*Id.* at p. 1277.) For the same reason, the rule of lenity is inapplicable here, and we may not construe the statute in the defendant's favor. (*Ibid.*) Accordingly, we are constrained to rely on the plain language rule and conclude that the "violent felony" designation in

12

section 667.5, subdivision (c)(21) applied to the burglary allegations in this case, and the court did not impose an unauthorized sentence. Any change in the definition of "violent felony" under that statute must come not from this court but from the Legislature.

## II.

In our review of the record in this case we discovered discrepancies between the abstract of judgment, the court's oral pronouncement of the sentence, and its minute order. For instance, the abstract of judgment makes no reference to the sentence imposed on count 28, despite its centrality to this case. Further, the abstract does not reflect the consecutive terms imposed on counts 13, 18, and 50. In addition, the sentence imposed for many other counts was concurrent or stayed under section 654, but those counts are not included in the abstract of judgment. In the interest of clarity, we remand the matter for the trial court to prepare an amended abstract of judgment accurately reflecting the sentence imposed.

DISPOSITION

The judgment is affirmed. The matter is remanded for the trial court to prepare an amended abstract of judgment consistent with this opinion and forward a certified copy of it to the Department of Corrections and Rehabilitation.


O'ROURKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

14